# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:17-CV-00618-GCM

| | |
|---|---|
| G. KENNETH ORNDORFF, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )     **ORDER**<br>) |
| LARRY RALEY<br>MARIA GRAZIA SHKUT<br>VILLAGE OF MARVIN, | )<br>)<br>) |
| Defendants. | )<br>)<br>) |

**THIS MATTER COMES** before the Court on Defendant Village of Marvin's ("Marvin") Motion to Dismiss for failure to state a claim. (Doc. No. 27). Plaintiff G. Kenneth Orndorff ("Orndorff") filed a response in opposition (Doc. No. 29) to which Marvin replied. (Doc. No. 30). Accordingly, this matter is ripe for disposition.

## I. BACKGROUND

According to the Amended Complaint, Orndorff served as a partner and vice president of a commercial real estate company, Raley Miller Properties, Inc. ("Raley Miller"). (Am. Compl., ¶5). Marvin is a municipality located in Union County, North Carolina. *Id.* at ¶3. In 2014, Orndorff began working with Marvin on behalf of Raley Miller to develop property owned by the company. *Id.* at ¶6. Orndorff's efforts included informal discussions with Marvin's Planning Board ("Planning Board") and submitting a formal zoning request to Marvin. *Id.*

While Orndorff worked with the Planning Board, Defendant Maria Grazia Shkut ("Shkut") served as the Chair of the Planning Board. *Id.* at ¶7. Orndorff and Shkut interacted several times

1

during that period. *Id.* The Amended Complaint states that during those interactions, "Shkut often acted inappropriately; interjecting herself personally in the zoning approval process, disseminating inaccurate and misleading information and jeopardizing the fairness and impartiality of the rezoning process." *Id.* at ¶8.

In June of 2014, Orndorff requested that Shkut recuse herself from any further involvement with the zoning request that Orndorff had submitted. *Id.* at ¶9. Shkut declined that request. *Id.* In October of 2014, the Planning Board recommended that Marvin not approve the development submitted by Raley Miller. *Id.* at ¶10. Raley Miller withdrew the request after this vote. *Id.*

In November of 2014, Orndorff submitted a public information request to Marvin that requested all "emails, audio and other documents related to the rezoning process." *Id.* at ¶11. Orndorff marked up the emails provided to him, and he resubmitted the marked-up copies to Marvin as evidence of "the impropriety of the rezoning process." *Id.* Upon receipt of the marked-up emails, Christina Frazzini, Mayor *Pro Tem* of Marvin at that time, added the issue to the Marvin Village Council agenda for the February 2015 meeting. *Id.* at ¶14. The Marvin Village Council voted to commend Shkut for "her handling of the rezoning request." *Id.*

Orndorff continued to attend the Planning Board meetings after Raley Miller had withdrawn its request. *Id.* at ¶15. In addition to attending the meetings, Orndorff "continued to speak out against perceived improprieties in the Village's land-use and planning policies and procedures." *Id.* Orndorff attended a Planning Board meeting in December of 2016. *Id.* at ¶16. During this meeting, Shkut publicly ridiculed Orndorff for "smirking." *Id.*

Shkut became a Marvin employee on December 29, 2016. *Id.* at ¶18. Marvin hired her to serve as Interim Planner. *Id.* On January 17, 2017, both Shkut and Orndorff attended a meeting of the Planning Board along with several other people. *Id.* at ¶19. Shkut attended the meeting in her

professional capacity as Interim Planner for Marvin. *Id.* Shkut gave a presentation during the meeting. *Id.* at ¶20. During the presentation, Shkut attempted to show a picture of time and temperature signs, but instead, a picture of gas signs appeared. *Id.* This mistake caused all in attendance to laugh, including Orndorff. *Id.* In response to Orndorff laughing, Shkut stopped the meeting, directed all attention toward Orndorff, and stated, "What's your problem? Seriously? Like seriously. I've had just about enough. Sorry. My apologies, Tom. He essentially stalks me everywhere I go. My stalker." *Id.* at ¶21. The Amended Complaint alleges those statements caused Orndorff embarrassment and mental anguish. *Id.* at ¶22.

On January 24, 2017, Orndorff sent a letter to Marvin that requested an apology from Shkut, an acknowledgement in writing that Orndorff was not a stalker, and a correction of Marvin's public record to reflect the same. *Id.* at ¶23. On January 26, 2017, Marvin's Village Council met to discuss the letter and the appropriate action in response to the letter. *Id.* at ¶24. Shkut was present at the meeting. *Id.* At that meeting, Marvin "encouraged, advised and approved of Shkut filing criminal charges against Plaintiff for stalking in a misguided effort to avoid liability for Shkut's prior defamatory statements." *Id.* at ¶24. Shkut caused a criminal summons for misdemeanor stalking to be issued against Orndorff on February 1, 2017. *Id.* at ¶26. On February 24, 2017, a deputy served Orndorff with the summons while Orndorff attended a Marvin Village Council meeting. *Id.* at ¶27. The Union County District Attorney's office dismissed the charge against Orndorff on April 18, 2017. *Id.* at ¶28.

Orndorff suffered mental anguish and incurred legal fees in handling the charge of misdemeanor stalking. *Id.* at ¶29. As a result of the ordeal, Orndorff no longer attends meetings of the Marvin Village Council "to avoid further public embarrassment and the risk that even more offensive tactics might be used against him." *Id.* at ¶30.

At some point after the issuance of the criminal summons, Shkut's time as Interim Planner ended. *Id.* at ¶32. On August 8, 2017, at a meeting of the Marvin Village Council, someone made a motion to reappoint Shkut to the Planning Board. *Id.* at ¶35. Marvin Mayor Pollino suggested that the Council "hold off" because "re-appointing Shkut to a public position or re-hiring her as an employee of the Village could be viewed as the Village condoning or promoting her prior actions." *Id.* Despite this warning, the Marvin Village Council re-appointed Shkut. *Id.* On August 31, 2017, the Marvin Village Council gave the job of Administrator/Planner to Shkut despite another warning from Mayor Pollino. *Id.* at ¶36. At the time the Marvin Village Council gave the job of Administrator/Planner to Shkut, the Marvin Village Council was fully aware of Shkut's "prior defamatory statement toward Plaintiff, her general animosity toward Plaintiff, her abuse of process against Plaintiff, and her malicious prosecution of Plaintiff." *Id.* at ¶38. The Marvin Village Council was also aware of the effect that Shkut's actions had on Orndorff. *Id.* at ¶39.

With Shkut serving as Administrator/Planner, Orndorff will be required to meet directly with her to represent his clients' interests. *Id.* at ¶37. Marvin's appointment of Shkut to serve as Planner/Administrator was a "direct effort" to prevent Orndorff from continuing to participate in Marvin's land use and planning activities. *Id.* at ¶40.

## II.  STANDARD OF REVIEW

Federal courts have limited jurisdiction, possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A motion to dismiss for lack of subject matter jurisdiction must be granted if the court lacks statutory authority at any time to hear and decide the dispute. Fed. R. Civ. P. 12(b)(1). "The burden of proving subject matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). If the defendant

contends the pleading fails to allege facts upon which subject matter jurisdiction can be based, then "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id.* If the defendant argues that the jurisdictional allegations of the complaint are untrue, a court "may then go beyond the allegations of the complaint" and "determine if there are facts to support the jurisdictional allegations." *Id.*

When faced with a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept as true all well-pleaded allegations and . . . view the complaint in a light most favorable to the plaintiff." *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The Court "assume[s] the[] veracity" of these factual allegations, and "determine[s] whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000). Thus, to survive a motion to dismiss, the plaintiff must include within his complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### III. DISCUSSION

Orndorff filed an Amended Complaint with this Court alleging six different causes of action against Marvin. Those causes of action are: (1) slander, (2) malicious prosecution, (3) negligent hiring, retention and supervision, (4) state constitutional violations, (5) *Corum* claims for inadequate state law remedies, and (6) Section 1983 and 1988 violations. Marvin moved to dismiss each cause of action. Each cause of action will be discussed further below.

**a. Slander**

Orndorff's first cause of action alleged slander against Marvin. North Carolina recognizes two forms of slander: slander *per se* and slander *per quod*. Slander *per se* is an oral communication of false and defamatory words to a third person which is defamatory on its face and does not require the showing of malice or special damages. *Morrow v. Kings Dep't Stores, Inc.,* 290 S.E.2d 732, 736 (N.C. Ct. App. 1982). In order to properly plead slander *per se* in North Carolina, a plaintiff must sufficiently plead that defendant made an oral communication to a third party which amounts to (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace. *Flake v. Greensboro News Co.,* 195 S.E. 55, 60-61 (N.C. 1938). Slander *per quod* is an oral communication of false and defamatory words to a third person which is not defamatory on its face and requires the injurious character of the words be shown, as well as special damages. *Morrow*, 290 S.E.2d at 736-37.

### i. Governmental Immunity

Marvin first moved to dismiss the slander cause of action because Marvin is entitled to governmental immunity from the claim. North Carolina municipalities have sovereign immunity from suit arising out of the performance of "governmental, rather than a proprietary, function." *Doe v. Jenkins,* 547 S.E.2d 124, 126 (N.C. Ct. App. 2001) (internal citation and quotation omitted), *disc. rev. denied,* 560 S.E.2d 799 (2002). Municipalities can waive sovereign immunity by purchasing liability insurance. *See* N.C. Gen. Stat. § 153A-435 (2005). A governmental entity does not waive sovereign immunity if the action brought against them is excluded from coverage under their insurance policy. *See Norton v. SMC Bldg. Inc.,* 577 S.E.2d 310 (N.C. Ct. App. 2003)

(holding the purchase of liability insurance does not waive sovereign immunity because the exclusion in the policy excludes coverage for plaintiff's claim).

Under Federal Rule of Civil Procedure 12(b)(6), a court is to consider the complaint to determine if a plaintiff has pled a plausible cause of action. *Ashcroft*, 556 U.S. at 679. However, if a court considers materials outside of the pleadings to make this determination, the 12(b)(6) motion is converted into a Rule 56 motion for summary judgment. Fed. R. Civ. Pro. 12(d). District courts have "complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." *Stahl v. U.S. Dept. of Agriculture*, 327 F.3d 697, 701 (8th Cir. 2003) (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366, at 491 (2d ed.1990).

In support of Marvin's Motion to Dismiss, Marvin included the affidavit of Melanie D. Cox. (Doc. No. 27-1). The affidavit included a copy of Marvin's insurance policy along with Ms. Cox's statement regarding that policy. This affidavit was not included in the pleadings by the parties, but rather, appeared in support of Marvin's Motion to Dismiss. In the Court's discretion, the Court declines to consider the affidavit at the motion to dismiss stage. Rather, the Court will wait to consider the insurance policy in conjunction with other evidence on record at the appropriate time. Thus, the Court will consider only the pleadings to determine if Orndorff has stated a plausible cause of action.

Orndorff has sufficiently alleged that Marvin waived its immunity. In his Amended Complaint, Orndorff alleged "Upon information and belief, the Village has waived governmental immunity pursuant to N.C. Gen. Stat. § 160A-485(a) by purchasing liability insurance or participating in a local government risk pool." (Am. Compl., ¶67). Taken this well-pleaded

7

allegation as true, Orndorff sufficiently pled waiver of immunity on behalf of Marvin to defeat the present Motion to Dismiss.

### ii. Substantial Truth

Marvin next argued that even if Marvin were not entitled to governmental immunity, Orndorff still did not state a claim upon which relief could be granted because Shkut's statement that Orndorff was a stalker was substantially true. North Carolina recognizes the affirmative defense of truth to slander claims. *Losing v. Food Lion, L.L.C.*, 648 S.E.2d 261, 263 (N.C. Ct. App. 2007). Stalking is a statutory crime in North Carolina. The relevant statute is N.C. Gen. Stat. § 14-277.3A(c) which defines stalking as:

> A defendant is guilty of stalking if the defendant willfully on more than one occasion harasses another person without legal purpose or willfully engages in a course of conduct directed at a specific person without legal purpose and the defendant knows or should know that the harassment or the course of conduct would cause a reasonable person to do any of the following:
>
> (1) Fear for the person's safety or the safety of the person's immediate family or close personal associates.
>
> (2) Suffer substantial emotional distress by placing that person in fear of death, bodily injury, or continued harassment.

N.C. Gen. Stat. § 14-277.3A(c).

Marvin argued that because Orndorff admitted to "habitually" attending meetings of the Planning Board and communicated to Shkut on more than one occasion, Shkut's statement that Orndorff was a stalker was substantially true. This argument is without merit. The statute specifically states that a defendant is only guilty of stalking if the defendant "harasses another person without legal purpose." Here, Orndorff alleged that he attended the public meetings of the Planning Board to benefit his clients. There is nothing unlawful about that activity. Therefore, Orndorff sufficiently alleged that the statements made by Shkut were false. Accepting the allegations

8

in the Amended Complaint as true, Orndorff sufficiently alleged a cause of action for slander against Marvin.

### iii. *Respondeat Superior*

Finally, Marvin argued that Marvin could not be held liable for the actions of Shkut. In North Carolina, a principal can be held liable for the actions of an employee under a theory of *respondeat superior* when the employee is acting in furtherance of the principal's business at the time of the incident. *Creel ex rel. Morgan v. N. Carolina Dep't of Health & Human Servs.*, 566 S.E.2d 832, 833 (N.C. Ct. App. 2002) (citing *Hogan v. Forsyth Country Club Co.,* 340 S.E.2d 116, 121, *disc. review denied,* 346 S.E.2d 140 (N.C. Ct. App. 1986)). Here, Orndorff alleged that Shkut was working for Marvin in her role as Interim Planner at the time she made the alleged slanderous statement. The meeting was a public meeting organized by Marvin. Thus, Orndorff has sufficiently alleged that Shkut was within the scope of her employment at the time she made the statement.

Taking the allegations contained within the Amended Complaint as true, Orndorff sufficiently alleged a cause of action of slander against Marvin. As such, Marvin's Motion to Dismiss the slander claim is **DENIED**.

### b. Malicious Prosecution

Next, Marvin moved to dismiss Orndorff's malicious prosecution claim. In order to plead a prima facie case of malicious prosecution in North Carolina, a plaintiff must plead: (1) the defendant instituted, procured, or participated in a criminal prosecution against plaintiff, (2) with malice, (3) without probable cause, (4) which ended in failure. *Cook v. Lanier*, 147 S.E.2d 910, 913 (N.C. 1966). A principal can be held liable for the actions of an agent: "(1) when the agent's act is expressly authorized by the principal; (2) when the agent's act is ratified by the principal; or (3) when the agent's act is committed within the scope of his employment and in furtherance

9

of the principal's business." *Creel*, 566 S.E.2d at 833 (citing *Hogan,* 340 S.E.2d at 121. "In the first two of these three situations, liability is based upon traditional agency principles; in the third of these three situations, liability is based upon the doctrine of *respondeat superior*." *Id.*

Marvin argues in its memorandum supporting its Motion to Dismiss that because Shkut was not on the job when she took out the criminal complaint, Marvin cannot be held liable for her actions under a *respondeat superior* theory. However, Orndorff's complaint does not allege malicious prosecution against Marvin under a *respondeat superior* theory, but rather, Orndorff alleges malicious prosecution under traditional agency principles. As noted above, traditional agency principles in North Carolina allow a principal to be liable for the actions of an agent when the principal expressly authorized an agent to act in a specific manner. Here, Orndorff alleged that Marvin "encouraged, advised, and approved of Shkut filing criminal charges against Plaintiff in a misguided effort to avoid liability. . .." (Am. Compl., ¶92). Therefore, Orndorff sufficiently pled authorization on the part of Marvin to hold Marvin liable for the actions of its agent, Shkut.

Orndorff has sufficiently pled a claim of malicious prosecution against Marvin. Orndorff alleged that Shkut, at the direction of Marvin, took out a criminal complaint against Orndorff. Shkut did so with malice by intentionally instituting the proceedings without just cause or with reckless disregard for the truth. Orndorff alleged that Marvin did so without probable cause. Finally, the prosecution ended in favor of Orndorff via a dismissal by the District Attorney's office. Thus, Orndorff sufficiently pled a cause of action for malicious prosecution against Marvin. As such, Marvin's Motion to Dismiss this claim is **DENIED**.

   c. **Negligent Hiring, Retention, and Supervision**

Marvin also moved to dismiss Orndorff's claim of negligent hiring, retention, and supervision. In North Carolina, to state a claim for negligent hiring, retention, and supervision, a plaintiff must allege (1) the specific negligent act upon which the claim is founded, (2) "incompetency, by inherent unfitness or previous specific acts of negligence, from which incompetency may be inferred," (3) "either actual notice to the master of such unfitness or bad habits, or constructive notice, by showing that the master could have known the facts had he used ordinary care," and (4) injury as a result of the incompetency. *Walters v. Durham Lumber Co.*, 80 S.E. 49, 51-52 (N.C. 1913).

Orndorff alleged in the Amended Complaint that Shkut's improper conduct during the re-zoning process associated with the Raley Miller property and the statements regarding Orndorff's smirk rendered Shkut incompetent for the job of Interim Planner and eventually Administrator/Planner. This allegation does not sufficiently state the second element of this cause of action. Orndorff argues that those two incidents put Marvin on notice of Shkut's incompetency to serve in those roles. Orndorff reasons that Marvin keeping Shkut in her role despite this knowledge led to his injury.

This argument is without merit. North Carolina law on negligent supervision requires a nexus between the alleged incompetency and the injury suffered. *B.B. Walker Co. v. Burns Intern. Sec. Servs. Inc.*, 424 S.E.2d 172, 175 (N.C. Ct. App. 1993) ("there was no showing that there was anything in the background of either man which should have put defendant on notice that either man was incompetent or otherwise unfit for the job."). Here, there is no such nexus. Orndorff did not allege that Marvin had any prior actual or constructive knowledge of Shkut's disposition to defame Orndorff. Rather, Orndorff alleged that Marvin had knowledge that Shkut disliked Orndorff. Knowledge of simple personal grievances is not enough to hold an employer

11

liable for the sudden defaming speech of an employee. Orndorff failed to plead facts sufficient to support liability on Marvin's part for negligently hiring, retaining, or supervising Shkut. Therefore, Marvin's Motion to Dismiss Orndorff's claim of negligent hiring, retention, and supervision is **GRANTED**.

### d. State Constitutional Violations

Marvin moved to dismiss Orndorff's state constitutional claims as well. Orndorff alleged that Marvin violated Article I §§ 12 and 14 of the North Carolina State Constitution by depriving him of the right to assemble, freedom of speech, freedom of association, right to petition for redress of grievances, and right to access places where information and ideas are expounded. These alleged violations derive from the alleged harassment and malicious prosecution of Orndorff by Shkut which caused Orndorff to stop attending meetings of the Planning Board.

In North Carolina, "a citizen asserting abridgement of her state constitutional rights may assert a direct claim thereunder only absent an adequate state remedy." *Evans v. Cowan*, 510 S.E.2d 170, 178 (N.C. Ct. App.1999) (citing *Corum v. University of North Carolina*, 413 S.E.2d 276, 289 (N.C. 1992)). "The judiciary 'must bow to established claims and remedies where these provide an alternative to the extraordinary exercise of its inherent constitutional power.'" *Id.*

North Carolina case law defines an adequate state law remedy as a remedy that "addresses the alleged constitutional injury" and provides a plaintiff "an opportunity to 'enter the courthouse doors.'" *Taylor v. Wake County*, 811 S.E.2d 648, 654 (N.C. Ct. App. 2018) (quoting *Copper v. Denlinger*, 688 S.E.2d 426, 428-29 (N.C. 2010)); *Craig v. New Hanover Cty. Bd. Of Educ.*, 678 S.E.2d 351, 355 (N.C. 2009). North Carolina courts have found remedies with different standards of proof and against different defendants to be adequate state remedies. *See*

*Taylor*, 811 S.E.2d at 654-66 (listing decisions discussing an adequate state remedy under *Corum*).

Here, Orndorff has an adequate state remedy that precludes his constitutional claim. Orndorff alleged several different causes of action that derive from the actions of Shkut and Marvin. Specifically, Orndorff alleged slander and malicious prosecution which survived the present Motion to Dismiss. Each of those causes of action are predicated upon the same actions alleged in Orndorff's constitutional claims. Those causes of action look to compensate for the same constitutional injury alleged in the Amended Complaint. As such, Orndorff has an adequate state remedy against Marvin which precludes his state constitutional claims. Therefore, Marvin's Motion to Dismiss Orndorff's state constitutional claims is **GRANTED**.

   e. ***Corum* Claims for Inadequate State Law Remedies**

Marvin also moved to dismiss Orndorff's *Corum*[1] claims. *Corum* claims arise when a plaintiff is denied an adequate remedy by operation of sovereign immunity. Orndorff alleged that, to the extent the Court found sovereign immunity to apply to one of Orndorff's claims, a *Corum* cause of action would arise.

A court assessing ripeness must "balance the fitness of the issues for judicial decision with the hardship on the parties of withholding court consideration. A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) (quoting *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006)). Thus, "[a] claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact 'remains

---

[1] *Corum v. Unv. Of North Carolina Through Bd. of Governors*, 413 S.E.2d 276 (N.C. 1992).

wholly speculative.'" *Id.* (quoting *Gasner v. Bd. of Supervisors*, 103 F.3d 351, 361 (4th Cir. 1996)).

Here, Orndorff's *Corum* claims must be dismissed as unripe. At this stage in the proceedings, the Court has not found sovereign immunity to apply to any of Orndorff's claims. The Court recognizes the possibility that sovereign immunity could be found to apply later. Indeed, Orndorff noted that possibility in his memorandum in opposition. However, that is purely speculative at this point. Because Orndorff's *Corum* claims rely entirely on "future uncertainties," the claims are not yet fit for judicial decision. Therefore, the *Corum* claims are **DISMISSED WITHOUT PREJUDICE**.

### f. Section 1983 and 1988 Violations

Finally, Marvin moved to dismiss Orndorff's Section 1983 and 1988 claims. Orndorff claimed that Marvin, through the actions of Shkut and the pursuant ratification of those actions, deprived Orndorff of his constitutional rights under the color of state law in violation of Section 1983.

Congress passed Section 1983 to provide redress to private parties for the deprivation of their constitutional rights under the color of state law. 42 U.S.C. § 1983. In *Monell v. Dep't of Soc. Servs.*[2], the Supreme Court held that Section 1983 applies to municipalities. However, municipalities cannot be held liable under the theory of *respondeat superior* for Section 1983 claims. *Monell*, 436 U.S. at 694. "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely

---

[2] 436 U.S. 658 (1978).

14

for the actions of its employee." *Board of Cty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997). Rather, for a municipality to be held liable under Section 1983, the plaintiff must show that the constitutional deprivation occurred as a result of the enforcement of a municipal policy, practice, or decision of a municipality final decision maker. *Id.*

The Fourth Circuit identified four possible sources of official policy or custom that could give rise to municipal liability under Section 1983: (1) "written ordinances and regulations;" (2) "affirmative decisions of individual policymaking officials;" (3) omissions by policymaking officials "that manifest deliberate indifference to the rights of the citizens;" or (4) a practice "so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (quotations and citations omitted).

In this case, Orndorff did not allege that Marvin has a written ordinance or regulation that violated his constitutional rights. Rather, Orndorff alleged that Marvin ratified Shkut's conduct by appointing her to her position as Administrator/ Planner which "sent a clear message to Plaintiff that he is not welcome to participate in land use and planning activities in the Village, and that if he criticizes the Village or its policies, he will face retribution in the form of criminal accusations." (Am. Compl., ¶147). In his memorandum in opposition of the Motion to Dismiss, Orndorff cited several cases that held municipalities liable for the ratification of employee decisions. Orndorff argues that Marvin ratified Shkut's actions by hiring her to the position of Administrator/ Planner and not apologizing or stating that Orndorff is, in fact, not a stalker. Orndorff argued that these actions as a whole created an environment that deprived Orndorff of his First Amendment rights.

This argument must fail. While it is true that municipality ratification of certain employee actions can result in municipality liability under Section 1983, the ratification must still rise to the level of a policy or custom that deprives a plaintiff of his constitutional rights. For example, in *Hall v. Marion Sch. Dist. No. 2*[3], the Fourth Circuit held a school board had ratified the decision of a tortfeasor by refusing to intervene on behalf of the plaintiff despite knowledge of the improper reasons for her termination. *Hall*, 31 F.3d at 196. The tortfeasor terminated the plaintiff in that case. *Id.* In *Edwards v. City of Goldsboro*[4], the Fourth Circuit found municipality liability when the city manager ratified the chief of police's decision to deny an officer the right to teach off-duty safety courses. *Edwards*, 178 F.3d at 245.

Those cases are distinguishable from the case at bar. In both of those cases, there was a clear link between the ratified action and the constitutional deprivation. Here, that link is missing. Marvin never told Orndorff that he could not attend the meetings. Marvin never created an official policy that did not allow Orndorff to attend the meetings. Rather, Orndorff simply decided on his own fruition that he would no longer attend the meetings. This is not the same causal link as is apparent when an employee is fired, or an officer is affirmatively denied the opportunity to teach a safety class. Because Orndorff failed to sufficiently plead that causal link, Marvin's Motion to Dismiss as to the Section 1983 claim is **GRANTED**.

IV. **CONCLUSION**

For the aforementioned reasons, Marvin's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. Marvin's Motion to Dismiss as to negligent hiring, retention, and supervision; various state constitutional claims; and Sections 1983 and 1988 violations is

---

[3] 31 F.3d 183 (4th Cir. 1994).
[4] 178 F.3d 231 (4th Cir. 1999)

**GRANTED**. Orndorff's *Corum* claim is **DISMISSED WITHOUT PREJUDICE**. Marvin's Motion to Dismiss as to the slander and malicious prosecution claims is **DENIED**.

**SO ORDERED**.

Signed: October 17, 2018

Graham C. Mullen
United States District Judge