IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:17-CV-00618-GCM

| | |
|---|---|
| G. KENNETH ORNDORFF, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) **ORDER**<br>) |
| LARRY RALEY<br>MARIA GRAZIA SHKUT<br>VILLAGE OF MARVIN, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

**THIS MATTER COMES** before this Court on Plaintiff G. Kenneth Orndorff's and Third-Party Defendants Raley Miller Properties, Inc., RTS Investors II, LLC., David Miller, and Larry Raley's ("Third-Party Defendants") (collectively, "Movants") Motion to Dismiss (Doc. No. 31) Defendant Maria Grazia Shkut's ("Shkut") Counterclaims and Third-Party Complaint (Doc. No. 17). Shkut filed a response in opposition (Doc. No. 33) to which Movants replied (Doc. No. 34). Accordingly, this matter is ripe for disposition.

**I.    BACKGROUND**

Shkut's Counterclaims and Third-Party Claims arise out of Shkut's position on the Village of Marvin Planning Board ("Planning Board") and Movants' interactions with the Planning Board. The Village of Marvin is a municipality located in Union County, North Carolina. Raley Miller Properties, Inc. (Raley Miller) is a company that develops commercial real estate, *inter alia*.

According to the First Amended Counterclaims and Third-Party Complaint, the Village of Marvin appointed Shkut to its Planning Board in 2006. (Doc. No. 17, ¶14). In or around 2010, Raley Miller sought to have a piece of property annexed by the Village of Marvin. *Id.* at ¶15. David

Miller ("Miller") served as the contact for Raley Miller during these negotiations with the Village of Marvin. *Id.* Several conversations between Miller and representatives of the Planning Board "became highly contentious." *Id.* at ¶18. The Village of Marvin Council eventually denied Raley Miller's annexation application. *Id.* at ¶19.

In 2014, Raley Miller re-initiated the annexation attempt. *Id.* at ¶20. Raley Miller and its partners David Miller, Larry Raley, and Kenneth Orndorff ("Orndorff") chose Orndorff to lead the annexation attempt due to Miller's contentious relationship with the Planning Board and several Village of Marvin residents. *Id.* at ¶21. When Orndorff began his effort to develop the property, Shkut served as Chair of the Planning Board. *Id.* at ¶22. On or about March 26, 2014, Orndorff filed an application for commercial development and a petition for annexation of the Property ("Application") with the Village of Marvin. *Id.* at ¶23. The Application listed RTS Investors as the applicant. *Id.* at ¶24.

After the Application was submitted, Shkut received negative feedback from the Planning Board and Village of Marvin residents regarding the Application. *Id.* at ¶27. Shkut personally provided some negative feedback regarding the Application as well. *Id.* at ¶28. On or about June 8, 2014, Raley Miller and RTS Investors sent a demand letter via counsel to the Village of Marvin. *Id.* at ¶29. The letter demanded Shkut "recuse herself from the Planning Board's activities and not engage further in any manner in this rezoning application, whether as a member of the Planning Board or otherwise." *Id.* at ¶30. Additionally, the letter made several false statements about Shkut. *Id.*

Shkut and the Village of Marvin did not comply with the demand letter. *Id.* at ¶31. After consideration of the Application, the Planning Board voted unanimously to recommend that the Council deny the Application. *Id.* at ¶32. Raley Miller withdrew the Application prior to a full vote

by the Village of Marvin Council. *Id.* at ¶33. After withdrawing the Application, Orndorff began making "repeated and constant public record requests, seeking audio recordings of all Village of Marvin Planning Board meetings." *Id.* at ¶37. Orndorff made these requests even though he did not have any pending actions before the Village. *Id.* at ¶38. Orndorff would use the recordings to write lengthy commentaries focusing on Shkut. *Id.* at ¶39. These commentaries contained false statements about Shkut. *Id.* at ¶41.

Orndorff distributed the written commentaries to the Planning Board, Village of Marvin staff, and Village of Marvin residents. *Id.* at ¶42. Addtionally, Orndorff ensured the commentaries were presented at the Planning Board meetings to guarantee that they were a part of the public record. *Id.* at ¶43. Orndorff also attended Planning Board meetings. *Id.* at ¶44. While attending these meetings, Orndorff would disrupt the meetings by "publicly filming and photographing only Shkut, heckling, making disparaging comments, and otherwise harassing Shkut." *Id.* at ¶47.

Movants also created a Facebook group called Marvin Messenger. *Id.* at ¶48. On this group, Movants posted false statements about Shkut. *Id.* at ¶49. Movants deleted all public record of the site prior to filing the matter before this Court. *Id.* at ¶50.

Shkut accepted the position of Interim Planner with the Village of Marvin on December 29, 2016. *Id.* at ¶51. Movants "ensured Orndorff would attend the January 17, 2017 meeting of the Village of Marvin Planning Board." *Id.* at ¶52. During the meeting, Orndorff "heckled and ridiculed" Shkut. *Id.* at ¶53. Shkut made a statement about Orndorff's conduct. *Id.* at ¶54. Movants sent a second demand letter based on the statement made by Shkut. *Id.* at ¶55. Shkut subsequently quit her job as Interim Planner. *Id.* at ¶56.

On or about August 8, 2017, the Village of Marvin Council voted to reappoint Shkut as a member of the Planning Board. *Id.* at ¶59. On August 14, 2017, the Village of Marvin hired Shkut

to the position of Interim Administrator/ Planner for the Village. *Id.* at ¶60. Orndorff brought suit against Shkut and the Village of Marvin due in part to Shkut's hiring as Interim Administrator/ Planner. *Id.* at ¶62.

## II. STANDARD OF REVIEW

When faced with a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept as true all well-pleaded allegations and . . . view the complaint in a light most favorable to the plaintiff." *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The Court "assume[s] the[] veracity" of these factual allegations, and "determine[s] whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court "draw[s] all reasonable inferences in favor of the non-moving party." *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000). Thus, to survive a motion to dismiss, the plaintiff must include within his complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III. DISCUSSION

Shkut filed a First Amended Counterclaim and Third-Party Complaint alleging six different causes of action. Those causes of action are: (1) abuse of process, (2) defamation, (3) intentional infliction of emotional distress, (4) unfair and deceptive trade practices, (5) violation of the North Carolina RICO statute, and (6) civil conspiracy/ facilitation of fraud. The Court will discuss each cause of action below.

    a. **Abuse of Process**

Movants first moved to dismiss Shkut's abuse of process claim. In order to state a claim for abuse of process in North Carolina, a plaintiff must allege "(1) an ulterior motive, and (2) an act in the use of the legal process not proper in the regular prosecution of the proceeding." *Hewes v. Wolfe*, 330 S.E.2d 16, 19 (N.C. Ct. App. 1985). "The ulterior motive requirement is satisfied when the plaintiff alleges that the prior action was initiated by the defendant or used by him to achieve a purpose not within the intended scope of the process used." *Id.* "The act requirement is satisfied when the plaintiff alleges that during the course of the prior proceeding, the defendant committed some willful act whereby he sought to use the proceeding as a vehicle to gain advantage of the plaintiff in respect to some collateral matter." *Id.*

Shkut alleged that Movants' political allies shared the complaint filed against her publicly in an attempt to gain an advantage over her in the Village of Marvin local elections. According to Shkut, those facts constitute abuse of process. Movants argue that the actions of Movants' political allies did not satisfy the act requirement for the abuse of process cause of action. The crux of an abuse of process claim is the improper utilization of the legal process to gain an unfair advantage in a collateral matter. *See Williams v. Imeni*, No. 5:16-CV-516-FL, 2017 WL 2266849, at *6 (E.D.N.C. May 23, 2017) (holding extortion that is unrelated to the legal process is insufficient to support an abuse of process claim). A smear campaign that does not involve the improper use of the legal process is insufficient to allege an abuse of process claim. *See Holiday Magic, Inc. v. Scott*, 282 N.E.2d 452, 457 (Ill. App. Ct. 1972) (applying Illinois law) (holding that utilizing a complaint to create negative publicity is insufficient standing alone to sustain an abuse of process claim); *Analytic Systems Corp. v. Homgren*, No. 82 Civ. 2448 (RWS), 1983 WL 1828, at *2 (S.D.N.Y. 1983) (applying New York law) (holding "[t]he mere dissemination of information concerning a lawsuit does not constitute process.").

This Court finds that Movants' smear campaign does not constitute abuse of process. Shkut failed to allege that Movants utilized the legal process to gain an advantage in a collateral matter. Shkut did not allege, for example, that Movants utilized the discovery process or unnecessary filings to gain an advantage over her. Rather, Shkut relied only on the smear campaign which did not involve the legal process. In line with North Carolina law and persuasive authority from other jurisdictions, this Court holds that the actions of the Movants through their political allies does not constitute abuse of process. Therefore, Movants' Motion to Dismiss the abuse of process claim is **GRANTED**.

**b. Defamation**

Movants also moved to dismiss Shkut's defamation claim. Although there is no heightened pleading standard for defamation claims under the federal rules, the complaint still must set forth facts that raise the complainant's right to relief under the elements of a state law defamation claim beyond a merely speculative level. "When pleading a defamation claim, the allegedly defamatory statement made or published by the defendant does not have to be set out verbatim in the plaintiff's complaint if alleged 'substantially in haec verba[1] or with sufficient particularity to enable the court to determine whether the statement was defamatory.'" *Esancy v. Quinn,* WL 322607 at 4 (W.D.N.C.2006) (unpublished opinion) (quoting *Stutts v. Duke Power Co.,* 47 N.C.App. 76, 83–84 (1980) (footnote added)).

Shkut failed to sufficiently plead a defamation cause of action. Shkut alleged the following statements made by Movants constitute defamatory statements against Shkut:

- That Shkut had acted "deceptively" in her work;
- That Shkut was "biased" and incapable of being fair in her work.

---

[1] *In haec verba* means "[i]n these same words; verbatim." *In haec verba*, Black's Law Dictionary (8th ed. 2004).

- That Shkut is "terrible in dealing with people."

- That Shkut had "NO experience" as a planner.

- That Shkut was "manipulative."

- That Shkut was "crooked."

- That Shkut engaged in "criminal self-dealing."

- That Shkut "us[ed her] position to derive personal benefit."

*Id.* at ¶74. None of these statements as pled are actionable. While Shkut alleged that "Orndorff and all Third-Party Defendants" made those statements, the Amended Counterclaim and Third-Party Complaint fails to allege who made each statement in particular. Further, the Amended Counterclaim and Third-Party Complaint fails to provide any context for each statement. Rather, the allegation summarily states that these fragmented quotes constitute defamation. The Amended Counterclaim and Third-Party Complaint does not allege sufficient facts to make the claim for defamation anything more than mere speculation on the part of the Court. As such, Shkut failed to state a claim as a matter of law, and Movants' Motion to Dismiss the defamation claim is **GRANTED**.

### c. Intentional Infliction of Emotional Distress

Next, Movants moved to dismiss Shkut's claim of intentional infliction of emotional distress. In order to state a claim for intentional infliction of emotional distress in North Carolina, a plaintiff must plead "(1) extreme and outrageous conduct by the defendant, (2) which is intended to and does in fact cause, (3) severe emotional distress." *Holloway v. Wachovia Bank & Trust Co., N.A.*, 452 S.E.2d 233, 240 (N.C. 1994) (citing *Dickens v. Puryear*, 276 S.E.2d 325, 335 (N.C. 1981)). "Conduct is extreme and outrageous when it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community.'" *Guthrie v. Conroy*, 567 S.E.2d 403, 408-09 (N.C. App. Ct. 2002) (quoting *Briggs v. Rosenthal*, 327 S.E.2d 308, 311, *cert. denied*, 322 S.E.2d 479 (N.C. App. Ct. 1985)). The behavior must be more than "mere insults, indignities, threats… and… plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate or unkind." *Hogan v. Forsyth Country Club Co.*, 340 S.E.2d 116, 123 (N.C. Ct. App. 1986). It is a question of law for the Court to decide whether the plaintiff has alleged an action that could reasonably be considered extreme and outrageous. *Id.* at 121.

Shkut alleged that Movants acted in an extreme and outrageous manner by repeatedly attending the meetings of the Planning Board while none of the Movants had business before the Planning Board. While attending these meetings, Shkut alleged that the Movants targeted Shkut for insults, video recorded her, publicly defamed, and embarrassed Shkut. These actions do not rise to the level of extreme and outrageous under North Carolina law.

In North Carolina, the bar for extreme and outrageous conduct is a "stringent one." *Jolly v. Acad. Collection Serv., Inc.*, 400 F.Supp.2d 851, 866 (M.D.N.C. 2005) (citations omitted). For example, the North Carolina Court of Appeals stated in one opinion that "sexual battery, standing alone" did not constitute extreme and outrageous behavior. *Wilson v. Bellamy*, 414 S.E.2d 347, 359 (N.C. Ct. App. 1992)[2]. In another case, one employee subjected fellow employees to cursing, screaming, name calling, and other such actions. *Hogan*, 340 S.E.2d at

---

[2] "We do not condone the conduct alleged here. However, the record before us does not show conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Hogan,* 79 N.C.App. at 493, 340 S.E.2d at 123 (quoting Restatement of Torts, § 46 comment (d) (1965)). Rather, the record only presents some evidence of a sexual battery, and we are unwilling to hold on this record that a sexual battery, standing alone, constitutes the required extreme and outrageous conduct."

8

123. The North Carolina Court of Appeals found that those actions did not constitute extreme or outrageous conduct. *Id.*

The actions alleged by Shkut do not rise to the level of extreme or outrageous conduct in North Carolina. While the actions alleged may be described as annoying, they pale in comparison to the actions described above that the North Carolina Court of Appeals held were not extreme or outrageous. Thus, Shkut failed to state a claim as a matter of law, and Movants' Motion to Dismiss the intentional infliction of emotional distress claim is **GRANTED**.

### d. Unfair and Deceptive Trade Practices

Movants also moved to dismiss Shkut's unfair and deceptive trade practices claim. Unfair and deceptive trade practice claims in North Carolina are governed by N.C. Gen. Stat. § 75-1.1. In order to state a claim under that statute, "a plaintiff must [allege]: (1) defendants committed an unfair or deceptive trade practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby." *Carcano v. JBSS, LLC*, 684 S.E.2d 41, 49 (N.C. Ct. App. 2009) (citations omitted). Movants contend that Shkut failed to adequately plead the second and third elements.

The primary purpose N.C. Gen. Stat. § 75-1.1 is to protect the consuming public from unfair and deceptive trade practices. *Durling v. King*, 554 S.E.2d 1, 4 (N.C. Ct. App. 2001). When considering the in or affecting commerce element, courts evaluate the effect the alleged act had on the consuming public. *See id.*

Movants argue that Shkut did not adequately plead the second element of her claim because her allegations do not affect the consuming public. Movants cite *Carcano* for the proposition that in or affecting commerce in the real estate market requires a "provider" and "consumer." *Carcano*, 684 S.E.2d at 45-6. The *Carcano* court found that the misrepresentations alleged in that case did not have an impact on consumers, and thus, the misrepresentations were

not in or affecting commerce. *Id.* Movants argue that like the *Carcano* misrepresentations, the alleged actions in this case also are not in or affecting commerce because the allegations relate "solely between Movants and Ms. Shkut, individually." (Doc. No. 32, p. 17).

The Court finds Movants' argument persuasive. The Court must consider the primary purpose of N.C. Gen. Stat. § 75-1.1 when deciding claims based on unfair and deceptive trade practices. The legislature intended to protect consumers from unfair practices in the marketplace. *Durling*, 554 S.E.2d at 4. Here, Shkut attempts to recast a political and personal dispute as a practice that affects commerce. In support of this, Shkut alleged that Movants defamed her with the hope of swaying future zoning decisions. To the extent that future zoning decisions by the Village of Marvin Council are in commerce, the facts alleged by Shkut are too attenuated to support a claim for unfair and deceptive trade practices. The legislature intended to protect consumers from unfair trade practices- not civil servants from aggressive political tactics. *See HAJMM Co. v. House of Raeford Farms,* 403 S.E.2d 483 (N.C. 1991) (reasoning the statute is "clearly intended to benefit consumers"). Thus, Shkut failed to state a claim as a matter of law, and Movants' Motion to Dismiss the unfair and deceptive trade practices claim is **GRANTED**.

e. **Violation of the North Carolina RICO Statute (N.C. Gen. Stat. § 75D-1, ET SEQ.)**

Movants also moved to dismiss Shkut's claim that Movants violated the North Carolina Racketeer Influenced and Corrupt Organizations ("RICO") statute. The RICO statute provides as follows:

> No person shall: (1) Engage in a pattern of racketeering activity or, through a pattern of racketeering activities or through proceeds derived therefrom, acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money; or (2) Conduct or participate in, directly or indirectly, any enterprise through a pattern of racketeering activity whether indirectly, or employed by

> or associated with such enterprise; or (3) Conspire with another or attempt to violate any of the provisions of subdivision (1) or (2) of this subsection.

N.C. Gen. Stat. § 75D-4(a). A "[p]attern of racketeering activity" is defined as "engaging in at least two incidents of racketeering activity that have the same or similar purposes, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated and unrelated incidents." N.C. Gen. Stat. § 75D–3(b). "Racketeering activity means to commit, to attempt to commit, or to solicit, coerce, or intimidate another person to commit an act or acts which would be chargeable by indictment if such act or acts were accompanied by the necessary mens rea or criminal intent under. . . Chapter 14 of the General Statutes of North Carolina. . .." N.C. Gen. Stat. § 75D-3(c)(1)(b).

Shkut alleged only one activity in her First Amended Counterclaim and Third-Party Complaint that falls within the definition of racketeering activity under the North Carolina statute. Shkut alleged that Orndorff stalked her in violation of N.C. Gen. Stat. § 14- 277.3A. Assuming *arguendo* that Shkut adequately alleged stalking under the statute, that is only one unlawful activity covered by the RICO statute. None of the rest of the causes of action- abuse of process, defamation, unfair and deceptive trade practices- suffice as racketeering activity under the statute. Therefore, Shkut did not allege two or more incidents of racketeering activity which is required to establish a pattern of racketeering activity.

In an attempt to cure this flaw, Shkut argues in her Response in Opposition that she also alleged cyberstalking. A party may not amend their complaint by arguing a new cause of action or new facts in a brief in opposition to a motion to dismiss. *Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x 556, 565 (4th Cir. 2008) (holding a party may not amend their complaint in a brief in opposition of a motion for summary judgment). Rather, a party must

amend their complaint in order to add the new fact or cause of action. *Id.* Because Shkut did not plead cyberstalking in her Amended Counterclaim and Third-Party Complaint, Shkut is barred from amending her pleading by argument in her brief. Therefore, Shkut failed to appropriately allege cyberstalking in support of her RICO claim.

Finally, Shkut argues that the multiple instances of stalking can be considered a pattern of racketeering activity to support a RICO claim. The crime of stalking requires evidence that a defendant:

> willfully on more than one occasion harasses another person without legal purpose or willfully engages in a course of conduct directed at a specific person without legal purpose and the defendant knows or should know that the harassment or the course of conduct would cause a reasonable person to do any of the following:
> (1) Fear for the person's safety or the safety of the person's immediate family or close personal associates.
> (2) Suffer substantial emotional distress by placing that person in fear of death, bodily injury, or continued harassment.

N.C. Gen. Stat. § 14- 277.3A(c). The crime of stalking requires proof that the defendant engaged in a course of conduct. The North Carolina Court of Appeals has held that stalking requires "proof of multiple acts of defendant." *State v. Fox*, 721 S.E.2d 673, 678 (N.C. Ct. App. 2011). Thus, the different instances of stalking argued by Shkut only amount to one indictable offense for purposes of the RICO statute- one count of stalking[3]. Therefore, Shkut has failed to allege the pattern of racketeering activity as is required by the RICO statute. Shkut failed to state a claim as a matter of law, and Movants' Motion to Dismiss the RICO claim is **GRANTED**.

**f. Civil Conspiracy**

Lastly, Movants moved to dismiss Shkut's claim of civil conspiracy. "It is well established that there is not a separate civil action for civil conspiracy in North Carolina."

---

[3] The Court makes no finding of whether all the elements of the crime of stalking are present on these facts.

*Esposito v. Talbert & Bright, Inc.*, 641 S.E.2d 695, 698 (N.C. Ct. App. 2007). When the underlying substantive claims are dismissed, the civil conspiracy claim should be dismissed as well. *Id.*

Here, all of Shkut's underlying substantive claims have been dismissed. As such, she cannot sustain a cause of action for civil conspiracy. Therefore, Shkut failed to state a claim as a matter of law, and Movants' Motion to Dismiss the claim of civil conspiracy is **GRANTED**.

## IV. CONCLUSION

For the reasons stated above, Movants' Motion to Dismiss is **GRANTED**.

**SO ORDERED**.

Signed: October 24, 2018

Graham C. Mullen
United States District Judge